Eugene Richard GARDNER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–15768.

Court of Criminal Appeals of Oklahoma.

Aug. 4, 1972.

**300**

Shapard & Shapard, David C. Shapard, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert H. Mitchell, Asst. Atty. Gen., for appellee.

PER CURIAM:

Appellant, Eugene Richard Gardner, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, for the offense of Child Abandonment; his punishment was fixed at seven (7) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Betty Lou Gardner testified that she married the defendant on December 27, 1948. From said marriage, three children were born, Richard Lee Gardner, born May 26, 1950, Scott Eugene Gardner, born September 25, 1956, and Valerie Lynn Gardner, born April 14, 1959. She testified that she and the defendant were divorced in April 1967 and the defendant was ordered to pay Three Hundred Dollars ($300.00) per month, child support. She further testified that the defendant totally failed to pay any child support from June 1968 until she filed the charges in the instant case on October 8, 1969. She testified that the defendant was able-bodied and that to her acknowledge he was self-employed in the capacity of a foot doctor during this period of non-support.

A Deputy Court Clerk, Art Woodall, testified concerning records filed in the Court Clerk's office pertaining to the defendant.

Defendant did not testify and his evidence consisted of having certain Bible passages read to the jury.

■ The first proposition asserts that the court erred in not giving defendant sufficient time or notice of the trial date to prepare his defense. Defendant argues that he was not informed of his trial date until the evening prior to the actual trial. We are of the opinion that the defendant's contention was not timely raised. The records reflect that the Public Defender was appointed to represent the defendant on October 31, 1969. That the defendant, on the date of the trial, December 11, 1969, refused to allow the Public Defender to represent him and further refused to allow Senator Cleeta John Rogers, who was present in the courtroom, to represent him. Defendant announced that he was ready for trial and did not request a continuance to obtain the testimony of witnesses. The record further reflects that defendant was served a copy of a docket setting the case down for trial to which he informed the court that he had "a piece of paper but had

not looked at it." (Tr. 46–47) In Richardson v. State, 61 Okl.Cr. 278, 67 P.2d 804, the Court stated:

"The record shows that the court had appointed counsel for the defendant when he came into court and advised the court that he did not want counsel, and counsel was then permitted to withdraw from the case. As disclosed by the record, the court did not deny the defendant counsel, or refuse to appoint counsel for him, and the defendant in open court refused to permit counsel appointed to try his case. There is an old adage, which has a great deal of truth in it, 'That when a defendant elects to try his case and not accept the aid of counsel, he has a fool for a client.' * * *"

■ Defendant next asserts that the court erred in commenting on his failure to testify in violation of 22 O.S. § 701. The record reflects that after the State read the Information and made the opening statement, the court stated:

"THE COURT: You may make your statement now as to what you intend to prove as a matter of defense or you can reserve it.

"MR. GARDNER: I would like to make my statement now.

"THE COURT: Okay. The statement at this time is what evidence you propose to give. You don't have to take the stand and if you do take the stand you are subject to interrogation by the State. It won't count against you if you don't take the stand. Now that's up to you. You can call any witness that you care to call in your behalf.

"Now this opening statement is to advise the jury as to what your defense and how you propose to establish it and you do not have to make a defense in this matter until such time as the State has proved a prima facie case against you." (Tr. 11)

The record further reflects that at the conclusion of the State's evidence the following transpired:

"THE COURT: Do you want me to instruct him as to his rights? I have already instructed him as near as I could as to his rights.

"MR. ROGERS: I think it would be well, Your Honor, because he refuses to discuss any of his rights with me.

"THE COURT: You understand, Mr. Gardner, that you have the right to testify or not to testify as you choose?

"MR. GARDNER: Your Honor, I understand that.

"THE COURT: And, do you understand that it cannot be held against you if you do not take the stand and nobody can comment on that fact?

"MR. GARDNER: As I understand it, you have said it, Your Honor. I take it to be the truth.

"THE COURT: Now, having fully understood your rights, if you do, do you elect to take the stand, subject yourself to cross examination the same as any other witness or do you prefer to remain silent or would you care to consult with Senator Rogers before you announce your desire to this Court?

"MR. GARDNER: Your Honor, the Lord Jesus Christ has brought me to the place that he has showed me, just before we left awhile ago, to plead the blood of Jesus Christ because of these three things, evidence that has been introduced here today on paper.

"THE COURT: Mr. Gardner, this is not a time to make a speech. I want you to tell this Court whether or not you want to testify in your own behalf regardless of how you made that decision.

"MR. GARDNER: No, sir, Your Honor.

"THE COURT: Do you choose to remain silent?

"MR. GARDNER: Yes, sir." (Tr. 36–37)

We are of the opinion that the trial court was not commenting on defendant's failure to testify but rather was attempting to explain to the defendant who chose to repre-

sent himself as to the proper trial procedure. We further observe that the trial court showed great judicial temperance in attempting to keep the defendant within the framework of proper trial procedures. In view of the crystal clear evidence of the defendant's guilt, we cannot conclude that the trial court's remarks prejudiced the defendant to the jury. See Sweeney v. State, 51 Okl.Cr. 302, 1 P.2d 789.

The final proposition contends that the trial court erred in reading to the jury 22 O.S., §§ 926 and 927. The record reflects that after the jury began their deliberations they returned to the courtroom and asked the following question: "If found guilty can sentencing be left to the Judge?" The trial court thereupon instructed the jury as follows:

"In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma the jury may, and shall upon the request of the defendant assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided.

"Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

Defendant argues that the trial court erred in giving the additional instructions prior to ascertaining that the jury had found the defendant guilty, citing as authority, Shanahan v. State, Okl.Cr., 354 P.2d 780, and Thomas v. State, Okl.Cr., 361 P.2d 1106. We have carefully examined defendant's authorities and find that they are distinguishable from the case at bar. In *Shanahan*, supra, the court instructed the jury as follows:

" 'Should you find from the evidence, under the instruction, and beyond a reasonable doubt, that the defendant is guilty, it will be your duty to assess the punishment therefor, in your verdict, within the provisions of law set out herein. However, should you be unable to agree on the punishment, so state in your verdict and leave it to be assessed by the court.' "

In *Thomas*, supra, the court gave the following instruction:

" 'Should you find from the evidence under instructions and beyond a reasonable doubt, that the defendant is guilty, so state in your verdict, you may then assess the punishment therefore within the provisions of the law set out herein or you may leave the punishment to be assessed by the court.' "

In the instant case, the court gave the jury the following instruction:

"Should you find from the evidence, under the instructions, and beyond a reasonable doubt, that the defendant is guilty, it will then be your duty to assess the punishment therefor, in your verdict, within the provisions of law set out herein."

The jury retired from the courtroom and began deliberations. They were returned to the courtroom upon their request and asked the court if found guilty could the sentencing be left to the judge. The judge thereupon gave the additional instructions as provided by 22 O.S., §§ 926 and 927. We are of the opinion that because of the uncontroverted evidence on behalf of the State that the jury had in fact found the defendant guilty prior to returning to the courtroom to ask the court the question concerning punishment. The record reflects that the jury returned to the jury room to continue their deliberations at 4:40 p. m. and returned to the courtroom with a verdict at 4:48 p. m.

In conclusion we observe the record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.